UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------- X

JAIME URTUBIA, Individually
and on behalf of all other persons
similarly situated,

        Plaintiff,

        -against-

BA VICTORY CORP. and
ISMAEL ALBA,

        Defendants.

----------------------------------------------- X

Case No. 11 cv 2901 (LTS)(RLE)

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

**GLEASON & KOATZ, LLP**
122 East 42nd Street
New York, New York 10168
(212) 986-1544
Counsel for BA Victory Corp and Ismael Alba
John P. Gleason, of counsel and on the Brief
Rachel Black-Maier, on the Brief

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.........................................................................................3

PRELIMINARY STATEMENT................................................................................5

FACTS.............................................................................................................................5

ARGUMENT..................................................................................................................6

      I.  Standard of Review ...............................................................................6

      II. Plaintiff Fails to Allege Violation of
      Section 207........................................................................................................9

      III. Plaintiff Fails to Allege Violation of Statutory Minimum
      Wage...................................................................................................................11

      IV. Counts III and V Must be Dismissed - Improperly Pled.............12

      V.  Count V Fails to Allege a Cognizable Claim.............................13

      VI. Plaintiff Fails to Allege a Claim Under NYS Labor Law
      ...........................................................................................................................15

CONCLUSION .........................................................................................................16

# TABLE OF AUTHORITIES

Acosta v. Yale Clinics, 1995 U.S. Dist. Lexis 14881
(S.D.N.Y. 1995)……………………………………………………......11

Adams v. Johnson
   355 F. 3d 1973)………………………………………………...……6

Anderson v. Blockbuster Inc.,
   2010 U.S. Lexis 53854 (E.D. CA, 2010)……………………………...……7

Ashcroft v. Iqbal,
   129 S.Ct. 1937, 1949 (2009)…………………………………………10

Bailey v. Border Foods, Inc.,
   209 U.S. Dist. Lexis, 93378 (D. Minn. 2009
……………………………………………………………………12

Bell Atl. Corp. v. Twombly,
   550 U.S. 544, 127 S.Ct. 1955 (2007) Circ.,
1984)…………………………………………………………12

Carnegie-Mellon Univ. v.Cohill
   *484 U.S.  343 (1988)*………………………………………...……19

Chan v. Triple 8 palace
   *2006 U.S. Dist LEXIS 15780 (S.D.N.Y 2006)*…………………….………12

City of Chi. v. Int'l College of Surgeons
   *522.U.S. 156 (1997)*…………………………………………………19

Cohen v. United States
   *129 F.2d 733 (8th Cir. 1942)*…………………………………………..4

Conley v. Gibson
   *355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*………………..……5

Deleon v. Time warner Cable LLC
   *2009 U.S. Dist. LEXIS 74345 (C.D. CA.2009)*………………………....18

DeSilva v. North Shore-Long Island
   *2011 U.s Dist. LEXIS 27138 (E.D.N.Y. 2011)*……………………….4, 5, 6

Elliott v. Leatherstocking Corp.
   *2011 U.S. Dist LEXIS 40722 (N.D.N.Y. 2011)*..................................17, 18

Glenn Coal Co. v. Dickinson Fuel Co.
   *72 F.2d 885 (4th Cir.1934)*....................................................….......……..4

Greeson v. Imperial Irr. Dist
   *59 F2d 529 (9th Cir. 1932)*....................................................................4

Heng Chan v. Sung Yue Tung Corp.
   *2007 U.S Dist. LEXIS 7770 (S.D.N.Y 2007)*...........................................9

Hensley v. MacMillan Bloedel Conainers. Inc.
   *786 f.2d 353 (8th Cir. 1986)*...............................................................7

Ikea U.S. Inc v. Industrial  Board of Appeals
   *241 A.D.2d 454, 660 N.Y.S.2d 585 (2d Dep't 1997)*............................15, 16

Interstate Nat. Gas Co. v. Southern  Calif. Gas co.
   *209 F.2d 380(9th Cir. 1953)*................................................…..……….4

Jara v. Strong Steel Door, Inc.
   *872 N.Y.S. 2d 691 (kings County S. Ct.2008)*..........................….........16

Jones v. Casey's General Store
   *538 F. Supp. 2d 1094  (S.D. Iowa 2008)*..................................…........14

Kolari v. New York-Presbyterian Hosp.
   *455 F.3d 118 (2d Cir 2006)*.......................................................…......19

Matter of Stryker
   *158 NY 526 (1899)*..........................................................................16

Matter of Woodmar Realty Co. v. McLean
   *294 F.2d 785 (7th Cir.1961)*.................................................................4

Nicholas v. Mahoney
   *608 F. Supp. 2d 526 (S.D.N.Y 2009)*....................................................6

Operating Local 649 Annuity trust Fund v. Smith Barney Fund Mgmt. LLC.
   *595 F.3d 86 (2d Cir. 2010)*..................................................................4

People v. City of Buffalo
   *11 N.Y.S 314 (1890)*........................................................................15

People by Johnn Mitchell v. Interborough Rapid Transit Co.
169 A.D.2d 32, 154 N.Y.S. 627 (1st Dep't 1915)............................................15

People V. Vetri
309 N.Y. 401 (1955)..................................................................................15

Poblete v. Rittenhouse Mortg. Brokers,
675 F. Supp. 2d 130 (Dist.
Columbia,2009).........................................................................................8

Portillo v. Sarneveslit
2009 U.S. Dist. Lexis 10388 9N.D. Ca. 2009)...........................................19

SEC v. Milan Capital Group, Inc.,
2000 U.S. Dist. Lexis 5630, 00 Civ. 108 (DLC),
(S.D.N.Y.,2000)..........................................................................................9

Sapienza v. New York News, Inc.,
481 F. Supp. 676 (SDNY,
1979).........................................................................................................6

Thomson v Wooster.
114 U.S. 104; 5 S. Ct. 788 (1885)..............................................................4

Tom Doherty Ass., Inc. v. Saban Entertainment, Inc.,
60 F.3d 27 (2nd Circ., 1995).......................................................................9

Whiting v. Lacara,
187 F.3d 317, 320-21 (2nd Cir., 1999)........................................................8

Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,
339 F.3d 101 (2nd Circ.,
2003).......................................................................................................10

Wolman v. Catholic Health System
2010 U.S Dist. LEXIS 137392 (E.D.N.Y. 2010).........................................8

Wolman v. Catholic Health System 2011 U.S Dist. LEXIS 48223 (E.D.N.Y.
2011).......8

Zhong v. August August Corp.
498 F. supp. 2d 625 (S.D.N.Y. 2011).........................................................8

## PRELIMINARY STATEMENT

Defendants employed Plaintiff as a waiter between October 2010 and February 2011, at the Buenos Aires Restaurant located on East 6th Street in New York City. Plaintiff admits he was terminated for insubordination.

On April 29, 2011, Plaintiff filed a Complaint (the "Original Complaint") alleging that through certain practices Defendants violated provisions of the Fair Labor Standards Act ("FLSA") and New York State Labor Law ("NYLL"). On August 5, 2011, Plaintiff filed an Amended Complaint (the "Amended Complaint") containing substantially identical allegations.

However, the Amended Complaint does little more than repeat what Plaintiff alleged in the Original Complaint. He recites the elements of each claim as alleged in the Original Complaint and again in the Amended Complaint. He continues to attempt to support his allegations with marginal, generalized and sometimes inconsistent allegations, legal conclusions, and information and belief pleading.

The Amended Complaint offers the same legal conclusions as the Original Complaint and fails to offer specific allegations about the heart of Plaintiff's wage claims. While Plaintiff omits the allegation that he "had kept track of all his hours worked" – an issue at the heart of his wage claims – he continues to generalize about hours for which he was allegedly not compensated, and recites allegations that render the pleading inconsistent, preventing a court from determining whether Plaintiff was in fact properly compensated.

Plaintiff attempts to be specific in the Amended Complaint but fails: he simply offers dates of wage (proper) payments and the general conclusory allegation that he signed blank sheets for hours worked.

Similarly, while admitting to being paid tips from a tip pool for dinner hours, and presumably receiving direct tip compensation for lunch hours, Plaintiff fails to indicate how much he received in tips, again preventing the Court from determining whether Plaintiff was properly compensated. Instead, in conclusory fashion, he contends now – as opposed to the unnamed persons shared in the tips (in the Original Complaint – he "received a weekly check for [his] purported portion of the tip pool" -, an artifice that if credited would render every entity in the hospitality industry subject to suit.

Plaintiff's state law claims are deficient. The state law claims that are analogous to the federal wage and overtime claims fail for the same reasons, i.e., they fail to allow the court to assess whether Plaintiff and others were properly compensated. Neither the weekly hours worked nor the total wage is adequately alleged. Moreover, Plaintiff relies on a regulation that does not govern the food service workers or the hospitality industry. Plaintiff's final two counts must be dismissed because they fail to meet the statutory requirements, are improperly and insufficiently pled, or because Plaintiff has failed to exhaust his administrative remedies.

<u>STATEMENT OF FACTS</u>

Plaintiff Jaime Urtubia was employed for three to four months as a waiter at

a restaurant called "Buenos Aires" in Manhattan, New York, operated by Defendant BA Victory Corp. ("BA"). AC28, 33, 35.[1]  According to the Original Complaint, when he refused "to stay past 1:00 a.m. following a dinner shift," he was terminated. OC49.[2]  The Amended Complaint, however, resorts to conclusory vagueness: "Plaintiff Urtubia was constructively discharged in February 2011."

While his association with BA was short lived, Plaintiff alone seeks to represent all those "similarly situated," citing groups as unrelated and diverse as a headwaiter, waiters, servers, managers, runners, busboys, dishwashers, kitchen workers and delivery persons for a six-year period. OC, Prayer (a); OC15; AC36-41, 43.

In about October 2010, Plaintiff was hired by BA. OC28, AC33. He was told he would be paid $4.65 an hour plus tips. OC29, AC34. According to Plaintiff, the restaurant had a lunch and dinner shift. OC47, 35; AC45-46. While the Original Complaint was not entirely clear - it appearing that only the dinner shift was subject to the tip pool collection – the Amended Complaint is not much clearer, it alleges the dinner shift pooled tips but the lunch shift waiters "were permitted to retain their own cash tips" but not credit card receipts and related tips. OC35, 88; AC45-46.

Plaintiff does not mention the amount of tips he was paid working the lunch and dinner shift or even that he worked either shift or only one. Plaintiff's account

---

[1] "OC" refers to the Amended Complaint filed August 5, 2011.

[2] "OC" refers to the Complaint filed April 29, 2011.

of his hours worked while at BA is vague and inconsistent (in both the Original Complaint and the Amended Complaint.) While purporting to have "kept track of all his hours worked," OC42, he variously stated that he worked over 40 hours for the first few months, or 10 hours a day, or from 11:00 a.m. to past midnight (13 hours a day), for six or seven days a week, C30, or "in excess of 32 hours.") OC48. He also asserted that "most" employees worked 70 hours or more per week, C46, or "more than 40 hours a week," C31, 68, or "more than ten (10) hours in a workday." C71. In December, just one or two months after he was hired, Plaintiff alleged his hours were cut, but he fails to say how many hours he worked thereafter other than the conclusion he worked more than 40 hours OC48. The Amended Complaint, in comparison, makes almost no reference to the hours Plaintiff worked. Plaintiff alleges he complained to Defendant that he was not "getting paid for hours worked over 40 hours a week when most employees worked 70 hours or more per week." AC71. But, Plaintiff does not indicate when he allegedly worked more than 40 hours or when he worked more than 70 hours per week. While Plaintiff alleges a December 27, 2010 paycheck recited 32 hours at the proper hourly wage, he does not indicate how many hours he worked, alleging in conclusory fashion that "he had worked in excess of 40 hours." AC73. Plaintiff, as in the Original Complaint, fails to provide a proper account of his hours worked. The allegations in the Amended Complaint with regard to hours worked are vague, inconsistent and conclusory.

In December, just one month after first being employed, Plaintiff alleges he "was required to sign blank 'hours worked' forms before receiving paychecks for his

hours at $4.65 per hour and despite his continued work week in excess of 40 hours…", but he does not indicate how many hours he worked thereafter other than that he "continued to work in excess of 40 hours," OC48; AC73; he does not indicate when he worked more than 40 hours per week but alleges his paycheck for a week in December set forth "32 hours worked". AC73. Compare OC30 (for "first few months," he worked over 40 hours). Despite purporting to have worked in excess of 40 hours, Plaintiff claims that he told Defendants that "he and other employees might be entitled to overtime wages." OC46; AC71 (emphasis added).

While Plaintiff concedes that employees received a check for their portion of a tip pool, he does not indicate how much he or other employees received. OC35; AC47-50. Instead, he simply and conclusorily alleges other unnamed individuals who are unauthorized shared in the tip pool and that employees were never: (i) "informed as to how much money they had generated in tips on any given day," OC36, AC51 ("never told Plaintiff…the total amount of the tips"; (ii) "told what the collective 'tip pool' was at the end of the shift," C36, AC48 ("the total amount of tips generated by credit cards…was never provided…to Plaintiff…"); (iii) informed of "the total amount of the weekly collective 'tip pool,'" OC37, AC49; (iv) "provided with any records of tip pool amounts at any time," OC37, AC50; or (v) informed of "the method, standards, calculations or policies in effect which governed the specific percentage of the tip pool each employee received." OC38, AC53.

Plaintiff also alleges variously, upon information and belief, that

"[d]efendants' employees allowed those with managerial authority and ownership interests to share in the tip pool," OC39, AC ("...Defendants allowed those with managerial authority and ownership interests to share in the tip pool"), or "Defendants or Defendant's agent(s) or officer(s) or other persons not entitled to participate in the tip pool, shared directly or indirectly with the tips earned by Plaintiff and Class members at Buenos Aires," OC90, or Defendants "permitted individuals with managerial authority and ownership interests to share in the employee tip pool." OC91.

He does not disclose the identity of individuals who were alleged to have participated in the tip pool or provide any basis for his belief that others shared in the tip pool other than to allege in conclusory fashion – upon "information and belief" – in the Amended Complaint that Defendant Alba "removed cash from the tip pool at the end of a shift and kept the cash for his own benefit." AC57. Plaintiff does not allege the amount Alba allegedly removed, when he did so, or any basis for his belief that Alba shared in the tip pool.

## I. STANDARD OF REVIEW ON A MOTION TO DISMISS

"In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The Supreme Court sets forth a two-pronged approach for courts deciding

a motion to dismiss in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). District courts are instructed to first "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *DeSilva v. North Shore-Long Island*, 2011 U.S. Dist. LEXIS 27138 at 11-12 (E.D.N.Y. 2011) (citing Iqbal 129 S. Ct. at 1950). "Though legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." DeSilva, 2011 U.S. Dist. LEXIS 27138 at 12. "If a complaint contains well-pleaded factual allegations [,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." DeSilva, supra, at 12.

Allegations are not well pleaded if they are indefinite or erroneous by other statements in the complaint, *Thomson v. Wooster*, 114 U.S. 104, 5 S. Ct. 788 (1885); or where they are contrary to facts of which the court will take judicial notice, *Glenn Coal Co. v. Dickinson Fuel Co.*, 72 F.2d 885, 889 (4th Cir. 1934); or where they are not susceptible of proof by legitimate evidence, *Cohen v. United States*, 129 F.2d 733 (8th Cir. 1942), *Greeson v. Imperial Irr. Dist.*, 59 F.2d 529 (9th Cir. 1932); or where they are contrary to uncontroverted material

in the file of the case, *Interstate Nat. Gas Co. v. Southern Calif. Gas Co.*, 209 F.2d 380, 384 (9th Cir. 1953); *In re Woodmar Realty Co.*, 294 F.2d 785 (7th Cir. 1961), cert. denied, 369 U.S. 803, 7 L. Ed. 2d 550, 82 S. Ct. 643 (1962).

The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." DeSilva, supra at 12.

The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Twombly, supra at 550, (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). The motion to dismiss standard "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." Iqbal, supra, at 1949 (quoting Twombly, supra at 555).

A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do. Twombly, supra at 555. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. Id. at 557. Applying this standard, Plaintiffs fail to meet that burden for they "have not nudged their claims across the line from conceivable to plausible [and], their complaint must be dismissed." Id. at 570.

## II. PLAINTIFF FAILS TO ADEQUATELY ALLEGE A VIOLATION OF 207 or 206 (Count I)

Plaintiff alleges, among other things, that Defendants violated 29 U.S.C. §§ 206(a) and 207(a), by failing to pay Plaintiff overtime wages, at the rate of one and one-half times the regular rate of pay, for all time in which they allegedly worked in excess of forty (40) hours. OC51-60, AC 76-84. Under governing case

law, however, Plaintiff has failed to adequately allege a violation of §§ 206(a) and 207(a) sufficient to withstand a motion to dismiss.

Section 207 (a) provides in part: "No employer shall employ any of his employees… for a work week longer than forty hours unless such employee receives compensation for his employment in excess of [40 hours] at a rate not less than one and one-half times the regular rate at which he is employed.

In order to withstand a motion to dismiss, a plaintiff alleging a FLSA minimum wage or overtime claim must allege, at a minimum, the approximate number of regular hours and overtime hours for which he was not paid. *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 629 - 630 (S.D.N.Y. 2007)) (also ruling that the complaint should indicate who the other employees of the proposed class are); <u>see</u> <u>also</u>: *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 547 (S.D.N.Y. 2009) (finding a complaint sufficient where, "plaintiffs have specified . . . the approximate time they were employed and the approximate number of overtime hours they each worked per week without receiving overtime pay.").

The court must be able to ascertain through additional facts the hours alleged to have been worked and the amount that had been paid and "simply stating that [plaintiff] w[as] not paid for overtime work does not sufficiently allege [an FLSA violation]." <u>Zhong</u>, supra at 630; <u>see</u> <u>also</u>: *Bailey v. Border Foods, Inc.*, 2009 U.S. Dist. LEXIS 93378 at 3-7 (D. Minn. 2009). While a plaintiff may plead a FLSA violation upon information and belief, he may not avoid his pleading obligations as to the hours worked per week and wages paid

by alleging that defendant has better access to those records. <u>DeSilva</u>, supra at 22. Additionally, where plaintiff's allegations as to the number of hours worked are internally inconsistent, that claim is subject to dismissal. <u>Zhong</u>, supra at 630. Where plaintiff seeks to represent a class, he must specify by name or reference the other plaintiffs. Id. at 631.

Under <u>Twombly/Iqbal's</u> pleading standard and the governing FLSA case law, Plaintiff's allegations fail to overcome a motion to dismiss. To support his overtime claim pursuant to § 207(a), Plaintiff describes the hours he worked in a given week as "in excess of 40," AC80-81.

The allegations are insufficient under <u>Twonbly/Iqbal</u>. Plaintiff alleges conclusorily that Defendant "had a policy and practice of failing to pay Plaintiff and Class members their earned overtime wages…" AC80-81.

While Plaintiff alleges that the restaurant ran a dinner and a lunch shift, OC47, 49, AC45-46, 72[3] he never references specifically which shifts he worked on a given day, the duration of those shifts, or whether and of what duration any non-compensable periods such as employee meals or other non-compensable time are included, if at all, in the disparate hours alleged. <u>See</u>: *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 355 (8th Cir. 1986) (Plaintiff "must demonstrate that he was engaged in compensable activity within the meaning of the statute and that the wages received for that activity, if any, were below the

---

[3] Paragraph 73 of the AC is only one of three that mentions a date and a paycheck - it alleges Plaintiff worked 32 hours (short of the overtime threshold) between December 6, 2010 and December 12, 2010, but still fails to allege the shift he worked on any of the six days or the hours he worked on any of the six days. In paragraph 68 and 70 he alleges receiving a check for 40 hours each without any specification of dates and shifts.

statutory minimum.")

While referencing only three paychecks, in a three month period, AC69, 70, 73, he fails to allege the number of overtime hours worked in that period, and does not even allege that he had kept a record of his hours worked. Plaintiff tenders a series of naked assertions, largely tracking statutory language and devoid of any factual enhancement.

His allegations with respects to other Plaintiffs are even weaker. Simply parroting the language of the statute, Plaintiff's allegation that "he and other employees were not getting paid for hours worked over 40 hours a week" provides even less detail than Plaintiff provided about himself. AC71.

Courts hold that conclusory allegations that are simply consistent with the language of the statute will not withstand a motion to dismiss. See: *Wolman v. Catholic Health System*, 2010 U.S. Dist. LEXIS 137392 at 7-8 (E.D.N.Y. 2010), see also: *Acosta v. Yale Clinics*, 1995 U.S. Dist. LEXIS 14881 at 11 (S.D.N.Y. 1995) (plaintiff must specifically plead which waiters were denied proper overtime pay for each week they worked over forty hours). Given the limited factual allegations that Plaintiff has provided here, neither the court nor the Defendants can determine the extent of Defendants' liability, if any, to either Plaintiff or the proposed class. For those reasons, Count I must be dismissed.

III.   PLAINTIFF   FAILS   TO   ADEQUATELY   ALLEGE   THAT DEFENDANTS FAILED TO PAY THE STATUTORY MINIMUM WAGE (COUNT II)

Plaintiff's second cause of action asserts that Defendants have a "policy

and practice of refusing to pay the statutory minimum wage to Plaintiff and Class members for their hours worked" in violation of 29 U.S.C. § 206. AC86-89.

Plaintiff does not specifically furnish the basis for this cause of action. Indeed, the entire four-paragraphs of Count II contain no factual allegations whatsoever. Plaintiffs fails to allege (i) the date the alleged "policy and practice" began, (ii) the identity of those employees who "suffered damages" thereby or (iii) the specific number of hours worked.  Plaintiff's second cause of action is typical of Plaintiff's other claims - it is remarkable for what Plaintiff has failed to allege and not for the few conclusory allegations he does set forth.

29 U.S.C. § 206 requires that a covered employer pay its employees a wage of not less than $7.25 for each hour worked. See 29 U.S.C. § 206. However, where the employee also receives tips as part of his or her compensation, federal law allows employees to be paid a direct cash wage of $2.13. See 29 U.S.C. § 203(m). In New York, the allowable cash wage was $4.65, which increased to $5.00 as of January 1, 2011. Under both federal and state law, it is permissible for a covered employer to use some portion of an employee's tips – known as a "tip credit" - to supplement the amount owed to the employee under the minimum wage law, provided that the total amount received by the employee is equal to or in excess of the statutory minimum wage. See U.S.C. § 203(m) and Title 12 NYCRR § 137-1.5(e). Therefore, under federal law, $5.12 per hour of tip credit may be used to satisfy the minimum wage. Under state law, $2.60 per hour could have been used, and after January 1, 2011, $2.25 in tips can be used

to satisfy the minimum wage.

Under the FLSA, this tip credit may be taken by an employer when (1) the employer has informed the tipped employee of statutory requirements related to the tip credit; and (2) "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." *Heng Chan I*, 2007 U.S. Dist. LEXIS 7770 at 46-47 (S.D.N.Y 2007) (quoting 29 U.S.C § 203(m)).

Plaintiff concedes he was paid a cash wage of $4.65 per hour during 2010. AC73, 69, 70 (Plaintiff admits to receiving at least three pay checks in 2010 showing a rate of $4.65 an hour for the hours he worked). That amount satisfies the permissible direct cash wage under both federal and state law. Since Plaintiff concedes he was paid tips - but fails to allege the amounts he received - there is simply no basis to determine whether Defendant satisfied the minimum wage law. Moreover, contrary to Plaintiff's suggestion that he was entitled to know the amount of the tip pool and how much each employee contributed, neither § 206 nor § 203(m) requires that the employer provide to employees those records. See 29 U.S.C §§ 206, 203(m). For that reason, Count II must be dismissed.[4]

---

[4] Even assuming Plaintiff alleges that the employer may not avail itself of the tip credit, that claim is without merit. First, Plaintiff does not allege that he was <u>not</u> informed of the provisions of section 203(m), which allows an employer to rely upon a tip credit. Indeed, from the outset Plaintiff was told that he would be paid $ 4.65 an hour plus tips, which is consistent with the statute. See 29 U.S.C. § 203(m). Rather, Plaintiff conclusorily alleges that Defendants failed to disclose to Plaintiff and Class members: (i) how "to calculate how much tip money was in the glass jar," (ii) "never permitted Plaintiff and the other waiters…to calculate how much tip money was generated from credit card payments…," ; (iii) the "means to determine how much cash was removed by Defendants and not distributed,'"AC59-61; (iv), "Defendants…failed to inform…waiters… the

With respect to Plaintiff's contention that others shared in the tip pool, those allegations are inconsistent, devoid of facts and amount to nothing more than sheer conjecture. First, Federal law (29 U.S.C. § 203(m)) specifically allows tip pooling among employees who customarily and regularly receive more than $30 per month in tips.   Second, Plaintiff simply alleges conclusorily that unauthorized others, including those with managerial authority, and ownership interests or "agents, officers, or other persons" shared in the tip pool. A45-63. Third, Plaintiff does not allege that Defendants failed to inform him of the provisions of 203(m). He further alleges "Defendant Alba regularly removed cash from the tip pool at the end of a shift and kept cash for his own benefit" AC57. Although, Plaintiff now alleges an individual shared tips (AC57), he predicates the allegation "Upon information and belief" and fails to provide any other specific details such as a (i) date, (ii) location, or (iii) the amount of money Alba allegedly removed from the tip pool.

Plaintiff broadly lists categories of persons participating in the tip pool (waiters, bus boys, runners), but fails to mention a single identity, the name of a single waiter, bus boy or runner, or statement from any of them to support the belief that unauthorized persons were sharing in the tip pool.

The closest Plaintiff comes to a factual allegation with regard to misuse of tips is his allegation that sometimes (no dates or other identifying details are provided) a head waiter would count tips. When that occurred, Defendant Alba

---

specific percentage of the tip pool each employee received," AC53 or (v), the "percentage of the tip from the collective tip pool he was entitled to." AC52. None of these disclosures is required under federal law. See: 29 U.S.C § 203(m).

had him place the tips in an envelope, write the amount of tips on the outside and deliver the envelope to Alba or his wife. "Thereafter, the head waiter…was not told how the tips were distributed or what amounts were distributed" AC47. The allegation fails because Plaintiff does not (i) even allege that the head waiter counted tips, (ii) provide any date or even a range of dates within his three-month employment upon which the head waiter counted tips and (iii) provide any identifying details such as the name of the head waiter.

Plaintiff alleges in a general, broad fashion that Defendants failed to inform him of the amount of tips or the tip pool. Once again, Plaintiff provides neither (i) dates, (ii) a time period (remembering Plaintiff worked at the restaurant a scant three months), nor (iii) the identity of the waiters, runners, busboys who were allegedly not informed about tips.

Moreover, Plaintiff does not allege facts that would bring him under coverage of the FLSA. The Act requires, in pertinent part, that a "'tipped employee' is one that engages in an occupation in which he or she customarily and regularly receives more than $30 per month in tips". Yet, nowhere in the Amended Complaint does Plaintiff inform the Court whether he received, in any of the three months he worked, $30 or more in tips. See: 29 C.F.R. § 531.56.

Plaintiff faults Defendants for their alleged failure to "inform all other waiters, runners and busboys the method, standards, calculations or policies, if any, in effect which (sic) governed the specific percentage of the tip pool each employee received". This allegation fails because it runs counter to applicable

law.  The Department of Labor has advised restaurant owners that if employees decide to pool tips, and further agree that the employer should play a part in the collection and/or distribution of the pooled tips, it is reasonable for the owner to demand that the terms of the tip pool agreement be reduced to writing.  The employees must put the terms of the pool in writing and give it to the owner with a list of participating employees.

Because Plaintiff has failed to allege any facts to support a claim that unauthorized persons shared in tips, he cannot prevail on a claim that tips cannot be relied upon by the employer to satisfy the minimum wage.

For all the above reasons, this claim should be dismissed.

### V. COUNT III MUST BE DISMISSED BECAUSE IT HAS BEEN IMPROPERLY PLED

Relying on 12 NYCRR § 142-2.2, which purports to entitle an employee to receive one and one-half times the regular rate for hours worked in excess of 40 in a workweek and 12 NYCRR § 142-2.4 which provides that an employee receive one hour's pay at the minimum hourly rate for any day in which the spread of hours exceeds 10, Plaintiff contends, upon information and belief, that employees worked more than 40 hours in a work week and more than 10 hours in a workday and thus are entitled to overtime wages and a spread of hours payment. AC91-98.

First, as to the spread of hours claim, Plaintiff has pleaded conclusions which are merely consistent with liability and no more. Plaintiff states in conclusory fashion, upon information and belief, that Plaintiff and Class

members worked more than 40 hours a week. AC94. Where a plaintiff pleads facts which are merely consistent with defendant's liability, it "'stops short of the line between possibility and plausibility,' and therefore must be dismissed." See Bailey, 2009 U.S. Dist. LEXIS 93378 at *3. (quoting Twombly, 550 U.S. at 557). Plaintiff fails to cite which class members (i) worked more than 40 hours, (ii) when, (iii) how much they were compensated, or (iv) any other fact allowing one to determine whether he or any class member was properly compensated. It is not enough to simply refer to a statute and conclude that Plaintiff worked more than 40 hours a week for Defendants.

Next, for the same reasons that Plaintiff's FLSA overtime claim is inadequate, Plaintiff's allegations as to his state overtime claim also fail. See: Zhong, supra at 631.

Finally, it should be noted that 12 NYCRR § 142.2.2, the provision cited by Plaintiff, is a minimum wage regulation promulgated by the Commissioner of Labor, to address "miscellaneous industries and occupations." Its terms do not apply to employees covered by any other minimum wage order promulgated by the commissioner, like employees in the food service industry or hospitality industry. See 12 NYCRR § 142.1.1 (a). NYCRR § 137, by its terms, covers the restaurant industry. See 12 NYCRR § 137-1.5(e). Specifically, § 137 covers food service workers, who are employees "primarily engaged in the serving of food or beverages to guests, patrons or customers in the hotel and restaurant industries, including, but not limited to, wait staff, bartenders, captains and bussing

personnel, and who regularly receive tips from such guests, patrons or customers. NYCRR § 137 was superseded by NYCRR § 146 as of January 1, 2011. Since Plaintiff has relied upon authority not governing the workers at issue, this count should be dismissed or refashioned.

The New York Department of Labor has issued an advisory letter that states if total compensation is equal or greater than the minimum wages due including compensation for each day in which the spread of hours exceeds ten, "[n]o additional payments are due the employee because of the spread of hours provision…" *Chan v. Triple 8 Palace*, 2006 U.S. Dist. LEXIS 15780 at 75 (S.D.N.Y 2006).

For those reasons, Count III should be dismissed.

## VI. COUNT IV MUST BE DISMISSED BECAUSE IT HAS BEEN PLED IMPROPERLY

Citing both 12 NYCRR § 142-2.1(a), which provides that the basic hourly minimum wage shall be $7.25 per hour and 12 NYCRR § 137-1.5(e), which provides that a food service worker shall receive a cash wage of at least $4.65 per hour, provided that tips of such worker, when added to such cash wage, are equal to or exceed $7.25 per hour, Plaintiff alleges that Defendants failed to pay Plaintiff and Class members minimum wages for all hours worked in violation of § 663 and 12 NYCRR § 142-2.1. See AC99-104.

First, as addressed in Section III above, Plaintiff has not adequately pleaded the number of hours worked by him or Class members. See: Zhong, supra at 628 (complaint should allege hours worked for which the minimum

wage was not paid, and if bringing a complaint on behalf of similarly situated employees, should indicate who those other employees are and allege facts that would entitle them to relief). In fact, Plaintiff merely concludes, without specificity, that Defendants failed to pay Plaintiff wages as required by law. Therefore, there is no way for the court to determine whether Plaintiff and other workers were not paid the minimum wage.

The claim that Defendants failed to pay minimum overtime wages is nothing more than rank speculation, unsupported by requisite factual pleadings. Where a plaintiff pleads facts that are merely consistent with defendant's liability, it "stops short of the line between possibility and plausibility, and therefore must be dismissed." See Bailey, 2009 U.S. Dist. LEXIS 93378 at 3 (quoting Twombly, 550 U.S. at 557); See also: *Jones v. Casey's General Store*, 538 F. Supp. 2d 1094, 1103 (S.D. Iowa, 2008) (the complaint in "civil litigation is not an invitation to an unfettered fishing expedition for evidence of wrongs that might have occurred.").

Second, as noted above, see 12 NYCRR § 142-2.1, the provision relied upon by Plaintiff to support the purported NYLL violation is a minimum wage regulation promulgated by the Commissioner of Labor, to address "miscellaneous industries and occupations." It does not apply to employees covered by any other minimum wage order promulgated by the commissioner, like employees in the food service industry or hospitality industry. 12 NYCRR § 142.1.1 (a) (excluding employees covered by other minimum wage orders from its

protections). NYCRR § 137 was superseded by NYCRR 146 as of January 1, 2011. While Plaintiff references § 137, he fails to allege a violation of that section and does not reference NYCRR § 146 at all. Since Plaintiff has relied upon authority not governing the workers at issue, this count should be dismissed or refashioned.

For those reasons, Count IV should be dismissed.

## VI. COUNT V FAILS TO STATE A COGNIZABLE CLAIM

Plaintiff bases this claim for relief on § 191(1)(a) of the New York State Labor Law, which provides that a "manual worker" must be paid on a weekly basis. Plaintiff contends that he and Class members are manual workers and thus entitled to receive wages "not later than seven calendar days after the end of the week in which the wages are earned." AC106. According to Plaintiff, Defendants failure to pay wages within that time period violates § 663 of the N.Y.S. Labor Law and 12 NYCRR §142-2.1.12

Plaintiff's claim must fail because he does not fall within the definition of manual worker. Section 190 of the NYLL provides that a manual worker means "a mechanic, workingman or laborer." Precedent construing the statute (and its predecessor) makes clear that this section is applicable only to laborers engaged in manual labor. *People v City of Buffalo*, 11 N.Y.S. 314, 317-318 (1890); *People by Mitchell v. Interborough Rapid Transit Co.*, 169 A.D.2d 32, 35 (1st Dep't 1915) ("[m]echanics, workingmen [as in original] or laborers, as those terms are ordinarily and naturally used."). So, for example, clerks, secretaries, teachers,

fireman and police officers are not considered manual labor. See: City of Buffalo, supra at 315-316. Similarly, stenographers, accountants, typists, chainmen, levelmen, civil engineers, bookkeepers, draftsman, structural designers, and clerks are not considered manual labor. Mitchell, 169 A.D.2d at 35. Since there are simply no allegations in the Complaint of the types of functions performed by waiters at Buenos Aires restaurant and therefore whether their work constitutes manual labor, this count must be dismissed.

Even based on the common understanding of a waiter's functions in taking orders and servicing customers, the functions and responsibilities of waiters would not fall within the definition of, or amount to, manual labor. Compare IKEA U.S. Inc. v. Industrial Board of Appeals, 241 A.D.2d 454, 455 (2d Dep't 1997) (suggesting, without deciding, that if an employee's principal function was assisting customers, statute would be inapplicable); In the Matter of Stryker, 158 N.Y. 526, 531 (1899) (suggesting employee who principally acted as salesperson would not be covered by the statute). For those reasons, this count must be dismissed.

Moreover, an action arising under § 191 must first be the subject of an administrative review by the commissioner. The exhaustion of this remedy is a prerequisite to suit. See N.Y.S. Labor Law § 196 (the Commissioner of Labor "shall investigate and attempt to adjust equitable controversies between employers and employees relating to this article.") (emphasis supplied); see also: Jara v. Strong Steel Door, Inc., 2008 U.S. Dist. LEXIS 4771 at 15, (Kings County

S. Ct. 2008)("exhaustion of administrative remedies would also be a prerequisite to suit under Labor Law § 191"); Since Plaintiff has not alleged that he has exhausted his administrative remedies, this count should be dismissed on this alternate ground.

VII.   PLAINTIFF HAS FAILED TO STATE A CLAIM
        UNDER 196-D OF THE NYS LABOR LAW

Again relying on information and belief allegations, Plaintiff's sixth count alleges the following: (1) Defendants required Plaintiff and Class members to contribute all gratuities from dinner shifts to the collective "tip pool"; (2) Defendants intentionally and knowingly, failed to disclose to Plaintiff and Class members: (i) the total daily and weekly amounts placed into the tip pool; (ii) each employee's percentage of said tip pool; and (iii) the total amounts of tip pool distributions; (3) Defendants or Defendants' agent(s) or officer(s) or other persons not entitled to participate in the tip pool, shared directly or indirectly with the tips earned by Plaintiff and Class members at the Buenos Aires restaurant. AC112-120.

New York Labor Law § 196-d states in pertinent part that "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." See: NYLL § 196-d.

Plaintiff's claim is not adequately pled – it is devoid of a single factual allegation supporting a violation of § 196-d or identifying the basis for the belief

that unauthorized persons shared in the tip pool. Plaintiff alleges that Plaintiff and Class members were "required" to contribute to the tip pool during dinner shifts. AC115-116. But neither the FLSA nor State law prohibits such a tip sharing arrangement among eligible employees and Plaintiff cites none in support. *Elliott v. Leatherstocking Corp.*, 2011 U.S. Dist. LEXIS 40722 at 14 (N.D.N.Y. 2011)) citing 12 NYCRR § 146-2.15 (finding that New York Department of Labor expressly permits tip pooling (also known as tip sharing)). Plaintiff then alleges that Defendants never provided any records regarding the amounts in the tip pool or how they were distributed. Again, Plaintiff cites to no rule or statute requiring Defendant to provide the above referenced accounting to its employees. See <u>Leatherstocking Corp.</u>, supra at 23 ("there is nothing in the plain language of § 196-d that requires employers to expressly provide any particular notice or accounting to employees") (emphasis provided). Nor does Plaintiff allege that he or any other employee ever asked Defendant for such records. In short, Plaintiff's claim rests on the premise that since he did not have a full accounting of the tip pool, even though he or others were not alleged to have asked for one, some unauthorized person must have shared in the tip pool. The identity of the unauthorized person is not provided, save a couple of omnibus allegations that it could be anyone who is not entitled to participate in the tip pool. AC117. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Leatherstocking Corp.</u>, supra at 8 (citing Iqbal).

The law is plain regarding purely conclusory allegations. "It is not enough," as Plaintiff has done here, "to simply parrot the statutory language for each purported claim. To withstand a motion to dismiss, Plaintiff must plead sufficient 'factual content' to allow the Court to make a reasonable inference that Defendant is liable for the claims alleged by Plaintiff." *Anderson v. Blockbuster Inc.*, 2010 U.S. Dist. LEXIS 53854 at 9 citing *DeLeon v. Time Warner Cable LLC*, 2009 U.S. Dist. LEXIS 74345 at 7 (citing Iqbal, 129 S. Ct. at 1940; Twombly, supra, at 556); see also: *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.").

Like Plaintiff's NYLL § 191 claim, (Section V above), a count alleged to arise under Article 6, § 196 must first be subject to administrative review by the commissioner and that the exhaustion of this remedy would also be a prerequisite to suit. See N.Y.S. Labor Law § 196 (the Commissioner of Labor "shall investigate and attempt to adjust equitable controversies between employers and employees relating to this article."). Plaintiff has not alleged that he has exhausted his administrative remedies.

For the reasons stated above, Plaintiff's sixth cause of action should be dismissed with prejudice.

VIII.   THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
        JURISDICTION
        OVER THE STATE CLAIMS

Plaintiff sets forth six (6) causes of action in his Complaint: two under the

Fair Labor Standards Act ("FLSA"), and four under New York state labor laws. While it is alleged that this Court has jurisdiction over the FLSA Claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1332, this Court has discretion to assert supplemental jurisdiction over Plaintiff's state labor law claims pursuant to 28 U.S.C. § 1367.

The doctrine of supplemental jurisdiction over pendent state law claims is flexible, "designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349-350 (1988). Supplemental jurisdiction over pendent state law claims is discretionary and pursuant to Subsection 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim under 28 U.S.C. § 1367(a) if: it has dismissed all claims over which it has original jurisdiction. See: *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir 2006) (citing *City of Chi. v. Int'l College of Surgeons*, 522 U.S. 156 (1997)). "A federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." Id.

Since Plaintiff's sole federal claims must be dismissed, the Court should decline to exercise supplemental jurisdiction over the state claims. See Zhong, supra at 631; *Portillo v. Sarneveslit*, 2009 U.S. Dist. LEXIS 10388 at 8-9 (N.D.

CA. 2009).

## CONCLUSION

For all the foregoing reasons, the Amended Complaint should be dismissed.

Dated: New York, New York
      October 3, 2011

                    Gleason & Koatz, LLP

                    By: /s/ _John P. Gleason_
                        John P. Gleason
                    122 East 42nd Street
                    New York, New York 10168
                    (212) 986-1544