UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x



JAMIE URTUBIA,

          Plaintiff,

   -v-                             No.  11 Civ. 2901 (LTS)(RLE)

B.A. VICTORY CORP. and ISMAEL ALBA,

          Defendants.
------------------------------------------------------------x

### MEMORANDUM ORDER

      Plaintiff Jamie Urtubia ("Plaintiff") brings this putative class and collective action against defendants B.A. Victory Corporation and Ismael Alba ("Defendants"), asserting claims pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"); New York Labor Law, N.Y. Labor Law §§ 1 et seq.; and New York Codes, Rules and Regulations ("NYCRR") for federal and state wage and hour law violations.  Plaintiff has moved for conditional collective action certification and other relief in connection with his FLSA claim, including an order prohibiting Defendants from threatening or retaliating against potential class members. Defendants have cross-moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the amended complaint.  The Court has jurisdiction of Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1367.  The Court has reviewed thoroughly and considered carefully all of the parties' submissions and, for the following reasons, each motion will be granted in part and denied in part.

<u>B<small>ACKGROUND</small></u>

The following facts are derived from the allegations in the Amended Complaint, unless otherwise indicated, and are assumed to be true for purposes of the instant motion practice.

Defendants own and operate the Buenos Aires restaurant (the "Restaurant"), which is located on East 6th Street in New York, New York.  Plaintiff was hired by Defendants to work as a waiter at the Restaurant sometime in October of 2010.  Plaintiff was told he would be paid $4.65 per hour, plus tips.  He was not told that tips at the Restaurant were pooled and then distributed among waiters, food runners and bussers.  Nor was he told about the federal statute that allows for a "tip credit"—that is, 29 U.S.C. § 203(m), which provides that an employer may use an employee's tips to count toward a portion of the employee's wage for the purposes of federal wage laws.

From October 2010 to January 2011, Plaintiff worked at the Restaurant, often for 12 to 14 hours per day, from approximately 11:00 a.m. to sometime after midnight, five or six days a week.  He was not required to sign in or sign out at the beginning or end of each work day. Plaintiff, along with the other waiters, food runners and bussers, was required to place any cash gratuities that he received during dinner shifts into a large jar next to the cash register. Defendants never told Plaintiff and the other waiters, runners and bussers how much money was generated in tips for each day or what the total collective "tip pool" was at the end of a shift.  Nor were they told what percentage of the tip pool each of them was entitled to receive.  Defendants allowed employees with managerial authority and ownership interests to "share in the tip pool," and "Defendant Alba regularly removed cash from the tip pool at the end of a shift and kept the

cash for his own benefit."

Plaintiff received his first paycheck from Defendants on December 7, 2010, almost two months after he began working at the Restaurant. The paycheck set forth an hourly wage of $4.65 per hour for 40 hours of work done from October 18 to October 24, 2010. Defendants refused to give Plaintiff his paycheck until Plaintiff agreed to sign a time sheet with blank spaces labeled "date" and "hours worked" and, next to each pair of blank spaces, a line for the employee's signature. Defendants told Plaintiff that Defendant Alba's wife would fill in the time sheet after he signed it and that she filled in these time sheets for all employees at the Restaurant. Later, Defendant Alba's wife told Plaintiff that no one at the Restaurant worked more than 40 hours per week, despite Plaintiff's personal knowledge that he and others regularly worked over 40 hours each week. Plaintiff was made to sign similar blank forms before receiving his paychecks on December 15 and December 24, 2010, and on unspecified dates thereafter.

Plaintiff alleges that other waiters, food runners and bussers at the Restaurant were similarly situated to him. All waiters were required to work 12 to 14 hours per day for five or six days a week and were compensated at the rate of $4.65 per hour, plus tips. Runners and bussers were required to work 12 to 14 hours per day, for five or six days each week, and were compensated at an hourly rate (which is unspecified in the amended complaint), plus tips. Dishwashers were required to work 12 to 14 hours per day, from 4:00 p.m. to 3:00 a.m., for six or seven days each week and were paid approximately $440 to $460 each week in cash. Plaintiff alleges that, like him, other waiters, runners, bussers and dishwashers at the Restaurant were not paid overtime wages or spread of hours compensation, were not compensated for any hours

worked over 40 hours each week and were not told how large the tip pool was each week or what their individual share of the tip pool would be.

In mid-December, Plaintiff told Defendants that "it was not right" that he and other employees were not paid for hours they worked over 40 hours each week. Immediately, Defendants removed Plaintiff from the lucrative Saturday lunch shift and eliminated a day of work from his schedule. Plaintiff continued to work more than 40 hours per week, but his paychecks reflected less than 40 hours of work each week. For example, Plaintiff's December 27, 2010, paycheck reflected only 32 hours of work, even though Plaintiff had worked more than 40 hours during the applicable pay period. Plaintiff asserts that he was "constructively discharged" in February 2011.

Plaintiff has submitted a signed and sworn affidavit in support of his application for collective action certification. In the affidavit, Plaintiff repeats the allegations in his complaint. In addition, he alleges that several current employees claim they were forced by Defendants to sign sworn affidavits about their wages and this lawsuit. (Urtubia Decl. ¶ 24.) Plaintiff also alleges in the affidavit that a former employee agreed to become a second named plaintiff in this action but then decided not to participate after Defendant Alba threatened to have him reported to immigration authorities and possibly deported. (Id. ¶¶ 25-26.) Plaintiff's counsel corroborates Plaintiff's allegations regarding the former employee. According to counsel, an unnamed individual, formerly employed as a dishwasher at the Restaurant, was retained as a class representative. (Christensen Decl. ¶¶ 5-6.) The former employee is an undocumented worker. (Id.) Less than a week after this individual came to Plaintiff's counsel's office to sign a retainer agreement, counsel received three separate letters sent via certified mail,

return receipt requested, from the individual. (Id. ¶ 8.) All three letters contained the following statement: "I hereby advise you to withdrawal [sic] the claim that I have against Victory BA Corp. I do not have any claim against these people. They do not owe me money. Please discontinue the claim." (Id. ¶ 9.) Plaintiff has submitted one of these letters, dated April 19, 2011, with the name of the individual redacted. (Ex. C, Christensen Decl.)

DISCUSSION

Defendants' Motion to Dismiss the Amended Complaint

Defendants assert that all of Plaintiff's claims should be dismissed as general and conclusory. Also, Defendants specifically challenge Plaintiff's third and fourth causes of action, for violations of state overtime wage, spread of hours and minimum wage laws, on the ground that Plaintiff cites to the wrong regulatory provision; Plaintiff's fifth cause of action, for violations of a state law governing frequency of payment, on the ground that the law does not apply to waiters; and Plaintiff's fifth and sixth causes of action, for violations of state laws governing frequency of payment and tip-sharing, respectively, because Plaintiff has not exhausted his administrative remedies.

Plaintiff's claims are supported sufficiently with factual allegations

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Under this standard, a pleader is obliged "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (internal quotation marks, citation and emphasis omitted). Defendants challenge each of Plaintiff's causes of action, arguing that the

Amended Complaint "fails to offer specific allegations about the heart of Plaintiff's wage

claims." (Defs.' Mem. of L. in Support of the Mot. to Dismiss p. 6.)  Defendants' argument is

without merit.  Plaintiff has pleaded sufficient factual material to support each of his causes of

action.  The Court need not discuss in detail here the adequacy of the pleadings for each of

Plaintiff's claims.  One representative example is sufficient to illustrate the point.

      In his first cause of action, Plaintiff asserts that Defendants violated the FLSA

overtime wage provision by failing to pay him a 50% premium for each hour over 40 hours

worked in a week.  Plaintiff alleges that he worked between 60 and 84 hours per week but was

paid for only 40 hours of work each week at a rate of $4.65 per hour.  Taking the facts pleaded as

true, Plaintiff was deprived of *any* wage for hours worked over 40 hours each week, including the

legally mandated overtime premium.  Plaintiff has provided additional factual enhancement,

alleging that he was forced to sign a blank time sheet documenting his hours worked and that,

after he signed it, Defendant Alba's wife completed the form and deliberately understated the

number of hours Plaintiff had worked.  Plaintiff has suggested further that Defendant Alba's wife

falsified other employees' time sheets in the same manner.  These pleadings are sufficient to

support Plaintiff's FLSA claim for failure to pay his overtime wages, so this aspect of

Defendant's motion will be denied.

      The Court has carefully reviewed the pleadings for each of Plaintiff's causes of

action.  Each is supported sufficiently by factual allegations where necessary to render the claim

plausible.  Defendants' arguments to the contrary are unavailing, so the motion to dismiss will be

denied insofar as it challenges the pleadings as general and conclusory.

Plaintiff's Third and Fourth Causes of Action—New York Labor Law Claims for
Overtime, Spread of Hours and Minimum Wage Compensation

In addition to challenging the sufficiency of the pleadings generally, Defendants

challenge specifically Plaintiff's claims for violations of New York's overtime wage, spread of

hours and minimum wage laws on the ground that the Amended Complaint cites to the incorrect

implementing regulation.

Overtime wage, spread of hours and minimum wage rates for the state of New

York are specified in regulations.  In his complaint, Plaintiff cites to sections 142-2.2 and -2.4 of

title 12 of NYCRR, which apply to all employees except those covered in any other wage order

promulgated by the Commissioner of Labor.  See 12 NYCRR § 142-1.1.  Defendants argue that

sections 142-2.2 and -2.4 do not apply to waiters such as Plaintiff because waiters are covered by

section 137 of the regulation.  Section 137, which was in force until January 1, 2011, applied to

employees at "any eating or drinking place that prepares and offers food or beverage for human

consumption either on any of its premises or by such service as catering, banquet, box lunch, or

curb service or counter service to the public." 12 NYCRR § 137-3.1(a).  Section 146 superseded

section 137 and applies to employees in the hospitality industry, including at restaurants.  See 12

NYCRR § 146-3.1.  Because Plaintiff appears to have cited the wrong regulatory provisions, his

claims for overtime wage, spread of hours and minimum wage law violations under sections

142-2.2 and -2.4 will be dismissed without prejudice to repleading under the proper provisions.

Plaintiff's Fifth Cause of Action—New York Labor Law Claim Regarding Frequency of
Payment

Next, Defendants challenge Plaintiff's fifth cause of action, asserting violations of

New York Labor Law section 191(1)(a), which requires that wages be paid weekly.  Section

191(1)(a) applies to any "manual worker," defined as a "mechanic, workingman, or laborer."

N.Y. Labor Law § 190(4).  Defendants argue that section 191(1)(a) is inapplicable to Plaintiff

because he is not a manual worker.  Defendants are mistaken: "Cooks and wait staff . . . are

classified as 'manual workers' under [New York Labor Law]."  See N.Y. Dep't of Labor Counsel

Opinion Letter RO-08-0139, Dec. 1, 2008, available at http://labor.ny.gov/legal/counsel-opinion-

letters.shtm, follow hyperlink for "Frequency of Pay (Labor Law § 191)" under the "Wage and

Hour Law" section; see also Bynog v. Cipriani Group, Inc., 298 A.D.2d 164, 165 (N.Y. App.

Div. 2002) (reversing trial court's grant of summary judgment and allowing waiters to pursue

claims that they were not paid on a weekly basis in violation of section 191), rev'd on other

grounds, 1 N.Y.3d 193 (2003).  Accordingly, this aspect of Defendants' motion will be denied.

> Plaintiff's Fifth and Sixth Causes of Action—New York Labor Law Claims Regarding
> Frequency of Payment and Tip Pooling

Defendants assert that Plaintiff's fifth and sixth causes of action, brought under

New York Labor Law sections 191 and 196-d, must be dismissed because Plaintiff failed to

exhaust his administrative remedies.  Defendants cite to Jara v. Strong Steel Door, Inc., in which

the court addressed claims of state wage law violations in connection with various public works

construction contracts.  Jara v. Strong Steel Door, Inc., No. 14643/05, 2008 WL 3823769 (N.Y.

Sup. Ct. Aug. 15, 2008).  The court in Jara dismissed the plaintiffs' section 191 claim, finding

that the claim was not supported by factual allegations in the pleadings.  Then, in dicta, the court

suggested that, even if the plaintiffs had pleaded adequately their section 191 claim, the claim

would be dismissed for failure to exhaust administrative remedies.  The court reasoned that,

because Labor Law section 220—the law applicable to wage violations in the context of public

works—requires the exhaustion of administrative remedies, the plaintiffs in Jara, who were

bringing a claim under section 191 in connection with public works contracts, were also required to exhaust administrative remedies. Whatever merit there is in applying section 220's exhaustion requirement to other wage violation claims brought in connection with a public works contract, New York Labor Law does not generally impose an exhaustion requirement where, as here, a plaintiff's claims are not connected to any public works project. See Krebs v. Canyon Club, Inc., 22 Misc. 3d 1125(A) (N.Y. Sup. 2009) (table) (New York Labor Law "does not generally preclude employees from bringing their own actions and does not generally require employees to exhaust administrative remedies or obtain any sort of right-to-sue letter from the Commissioner.") Accordingly, this aspect of Defendants' motion will be denied.

Plaintiff's Motion for Conditional Collective Action Certification and Other Relief

Plaintiff seeks an order (1) approving a proposed collective action notice for mailing to potential plaintiffs; (2) conditionally certifying this action as a collective action with the collective comprised of Plaintiff and "all current and former employees of Defendants who worked as waiters, runners, busboys, dishwashers, kitchen staff and delivery persons" at any time since March 8, 2009; (3) directing Defendants to provide the names and last-known addresses of all potential plaintiffs; (4) directing Plaintiff to mail the collective action notice to all potential plaintiffs; (5) permitting Plaintiff's counsel, if any notice to a potential plaintiff is returned as undeliverable, to mail the notice to any other address that Plaintiff's counsel may deem is appropriate; and (6) requiring that all potential plaintiffs must opt-in no later than 65 days following the date of mailing of the collective action notice and requiring Plaintiff's counsel to promptly file such executed consents with the Court and serve copies thereof on other counsel of record.

Plaintiff also seeks an order directing Defendants to cease and desist immediately all contact with potential putative class members with respect to any element of this action, including all communications and/or threats regarding INS[1] reporting or deportation, and ordering Defendants to produce any documents or other evidence demonstrating contact or any communication with any putative class member relating to this action, including the affidavits already allegedly executed.

At this time, Plaintiff is not seeking class certification under Rule 23 of the Federal Rules of Civil Procedure.

Conditional Collective Action Certification

At the initial stage of an FLSA collective action, a district court has "broad discretion to grant certification, to allow discovery, and to regulate notice." Morales v. Plantworks, Inc., No. 05 Civ. 2349, 2006 WL 278154, *2 (S.D.N.Y. Feb. 2, 2006) (citations omitted). The threshold question for exercising that discretion is whether the plaintiff has demonstrated that potential class members are "similarly situated" to him. Id. (citations omitted). A plaintiff can satisfy this burden by making a "modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." Id. (citations omitted).

Plaintiff Urtubia seeks conditional collective action certification, with the collective consisting of Plaintiff and:

---

[1]    The Court construes Plaintiff's reference to the immigration regulatory agency by its pre-2003 name to be a reference to federal immigration authorities in general.

all current and former employees of Defendants who worked as waiters, runners, busboys, dishwashers, kitchen staff and delivery persons who did not receive overtime wages for hours worked in excess of forty (40) hours per week, and/or minimum wages and/or who contributed to or received gratuities as part of the tip pool, at any time during the three year period immediately preceding the date of this Order.

(Pl.'s Proposed Order on Plaintiff's Motion to Approve Collective Action Notice.)  In support of

the request, Plaintiff has proffered his own affidavit, which makes the following allegations:

- "all waiters who worked at the Buenos Aires restaurant generally were required to work twelve to fourteen hours a day, five or six days a week, and were compensated at $4.65 per hour plus tips";

- "all runners and busboys . . . were required to work twelve to fourteen hours a day, five or six days a week and were compensated at an hourly rate plus tips"; and

- "all dishwashers . . . were required to work twelve to fourteen hours a day, six or seven days a week.  Dishwashers were required to work between 4 pm and 3 am and were not permitted breaks . . . [and] were paid approximately $440-460 per week in cash."

(Id. ¶¶ 36-38.)  Plaintiff alleges that these employees were not paid for hours worked over 40

hours each week, including overtime compensation.  (Id. ¶ 39.)  Moreover, he has alleged that

Defendants' misconduct was perpetuated by the same means against all employees.  Specifically,

Defendants required all employees, prior to receiving a paycheck, to sign blank time sheets and

Defendant Alba's wife completed the time sheets to understate the employees' hours worked.

(Id. ¶¶ 66-68.)  Plaintiff's affidavit, premised on his personal knowledge, is sufficient to support

conditional certification of a class that includes waiters, food runners, bussers and dishwashers

for the purpose of asserting federal claims concerning overtime compensation and minimum

wage compliance.  Plaintiff has not, however, proffered specific allegations regarding the work

hours and compensation of other kitchen staff and delivery persons, nor has Plaintiff asserted any

federal tip pooling claim.  Accordingly, Plaintiff's motion will be granted insofar as it seeks an

order allowing the case to proceed as a collective action on behalf of other waiters, food runners, bussers and dishwashers as to federal overtime and minimum wage claims, but denied without prejudice to the extent Plaintiff seeks to represent other kitchen staff and delivery persons or proceed on a collective action basis with respect to the tip pooling claim.

The Court will also approve Plaintiff's application for an order directing Defendants to disclose the names and last known addresses of current and former employees who are potential plaintiffs and putative members of the collective action class, and the Court will approve, with certain modifications, Plaintiff's proposed Notice of Lawsuit and Consent to Become Party Plaintiff forms.

<u>Plaintiff's Application for an Injunction and Related Discovery</u>

Plaintiff seeks an order directing Defendants to cease and desist all contact with potential class members about this lawsuit and specifically prohibiting Defendants from threatening potential class members with being reported to immigration authorities.

Rule 23 of the Federal Rules of Civil Procedure provides that, in the context of a class action, a district court may impose conditions on the representative parties, which includes limiting communications between representative parties and potential class members.  Fed. R. Civ. P. 23(d)(1)(C).  "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."  <u>Gulf Oil Comp. v. Bernard</u>, 452 U.S. 89, 100 (1981).  "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."  <u>Id.</u> at 101-02.  "[S]uch a weighing—

identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." Id. at 102.  A court possesses such supervisory authority even before a class is certified.  See In re Initial Pub. Offering Sec. Litig., 499 F. Supp. 2d 415, 418 n.13 (S.D.N.Y. 2007) (citing In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d 237, 252-53 (S.D.N.Y. 2005)).

Plaintiff alleges that several current employees told him that they were forced by Defendants to sign sworn affidavits about their wages and this lawsuit.  (Urtubia Decl. ¶ 24.) Plaintiff has also proffered evidence that an undocumented alien and former dishwasher at the Restaurant had agreed to be a co-plaintiff, withdrew from that arrangement through communications inconsistent with the claims he had agreed to assert and phrased in language suggestive of third-party authorship, and told Plaintiff that he had decided not to participate in this action after Defendant Alba threatened to have him reported to immigration authorities and possibly deported.  (Id. ¶¶ 25-26; Christensen Decl. ¶¶ 5-9; Ex. C, Christensen Decl.)

The Court finds that Defendants' workplace relationship with current employees, and their knowledge of sensitive information about current and former employees, put them in a position to exercise strong coercion in connection with potential class members' decisions regarding participation in this litigation.  The Court further finds that the evidence proffered by Plaintiff regarding the would-be co-plaintiff is sufficiently suggestive of actual interference by Defendants with the rights of potential class members to receive advice and consider whether to assert claims.  These circumstances are sufficiently fraught with potential for abuse to warrant a carefully tailored, limited restriction on Defendants' right to communicate directly with current and former employees who are potential class members regarding this litigation and its subject

matter (i.e., whether Defendants have complied and are in compliance with federal and state compensation payment requirements).  As used in this paragraph, the term "potential class member" means any waiter, runner, busser and dishwasher who performed any services for the Buenos Aires Restaurant at any time since April 29, 2005.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is granted with respect to Plaintiff's third and fourth causes of action and denied in all other respects.  Plaintiff may serve and file, within fourteen (14) days of the date of this Order, a second amended complaint correcting the regulatory citations in his third and fourth causes of action.

Plaintiff's motion for conditional collective action certification is granted with regard to waiters, food runners, bussers and dishwashers, and denied without prejudice as to other kitchen staff and delivery persons.  The Court will issue a separate order regarding the conditional certification and notice and opt-in procedures.

Plaintiff's motion for an injunction limiting Defendants' contact with potential class members is granted but with narrower restrictions than those proposed by the Plaintiff. Defendants are hereby prohibited from (1) retaliating, or threatening retaliation, directly or indirectly, against any potential class member for considering or asserting claims regarding Defendants' compliance with wage and hour laws, and (2) communicating with any potential class member regarding this lawsuit and its subject matter other than through the class member's counsel, if any, absent prior permission from the Court.  For purposes of this injunction, the term "potential class member" means any waiter, runner, busser and dishwasher who performed any services for the Buenos Aires Restaurant at any time since April 29, 2005.

Defendants are also directed to produce all written communications with potential class members (as defined in the preceding paragraph) at any time from January 1, 2011, to the present concerning Defendants' compliance with wage and hour laws, including but not limited to the above-described affidavits.  The documents must be produced to Plaintiff's counsel by **March 22, 2012.**

This case remains referred to Magistrate Judge Ellis for general pretrial management.  This Memorandum Order resolves docket entry numbers 23 and 27.

SO ORDERED.

Dated: New York, New York
      March 8, 2012

LAURA TAYLOR SWAIN
United States District Judge